Geoffrey S. Kercsmar (#020528)
Sean J. O'Hara (#024749)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gsk@kflawaz.com
sjo@kflawaz.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FRS GC Corp., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>Oak Tree Management LLC, a Wyoming limited liability company; Milagro Consulting LLC, a Wyoming limited liability company; and David Harbour and Abby Harbour, a married couple,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff, FRS GC Corp. ("Plaintiff"), assignee of FRS GC LLC, Fund Recovery Services LLC ("Fund Recovery"), Princeton Alternative Income Fund L.P. ("Princeton Alternative Income Fund"), and FinTech Financial LLC ("FinTech"), for its Complaint against Oak Tree Management LLC ("Oak Tree"), Milagro Consulting LLC ("Milagro"), and David Harbour and Abby Harbour, alleges and states the following:

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

**NATURE OF THE ACTION**

1.     This proceeding seeks recovery for claims arising from Oak Tree and Milagro's fraudulent actions and exploitation of their relationships with Green Circle ("Green Circle"), resulting in a significant, direct loss to Plaintiff.

2.     Plaintiff's predecessor-in-interest, FinTech, entered into agreements with Green Circle to make a series of loans. Defendants, through their separate relationships with Green Circle, misappropriated Plaintiff's loan proceeds by pocketing proceeds in direct contravention to the explicit terms in the loan documents.

3.     Plaintiff's loan documents expressly stated that the loan proceeds could only be used for the specific purpose of consumer lending. The loan documents intentionally articulated this restriction with the reasonable expectation that Green Circle and Defendants, because of their knowledge of the clear-cut terms of Plaintiff's loan documents, would comply with these terms.

4.     Upon information and belief, Defendants knew of both the loan documents and the particular restrictions stated therein. Despite this knowledge, Defendants capitalized on their relationship with Green Circle and caused Green Circle to use the loan proceeds in direct contravention to the explicit restrictions.

5.     Upon information and belief, David Harbour owns and controls Oak Tree and Milagro. David Harbour's position of control and trust within Green Circle empowered him, through Oak Tree and Milagro, to take significant financial actions to the detriment of Plaintiff. David Harbour exploited his influential position within these companies to illicitly divert loan proceeds and use them to address his own obligations, most notably to pay his fines to the Federal Trade Commission.

6.     This suit commenced after Plaintiff learned its loan proceeds were being diverted from Green Circle and knowingly misused by Defendants. Defendants' egregious actions resulted in Green Circle being unable to repay Plaintiff the money owed under outstanding loan agreements, causing Plaintiff direct harm.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE PARTIES**

7.     Green Circle, organized under the laws of the Wakpamni Lake Community Corporation ("the Corporation"), is a wholly-owned subsidiary and sovereign economic arm of the Corporation.

8.     The Corporation is a wholly-owned economic instrumentality of the sovereign Wakpamni Lake Community, which is the subordinate Community government of the Oglala Sioux Tribe, a federally recognized sovereign American Indian tribe.

9.     Plaintiff FRS GC Corp. is a Delaware corporation and assignee of Princeton Alternative Income Fund (through its assignment to Fund Recovery and FRS GC LLC), with its principal place of business at 100 Canal Pointe Boulevard, Suite 208, Princeton, NJ 08540.

10.     In its ordinary course of business, FinTech acts as a lender and provides loans to borrowers.

11.     On or about June 24, 2015, FinTech originated a loan with Green Circle.

12.     At the same time, Green Circle granted Plaintiff's predecessor-in-interest a security interest and lien in all its right, title, and interest in its commercial tort claims by separate assignment.

13.     By a separate assignment, FinTech assigned the loan to Princeton Alternative Income Fund. Princeton Alternative Income Fund later assigned the loan to Fund Recovery.

14.     For the purposes of this Complaint, the term "Lender" shall be used to reference FinTech, Princeton Alternative Income Fund, Fund Recovery, FRS GC LLC, or Plaintiff.

15.     After Green Circle's default, a direct result from Defendants' malicious actions, Princeton Alternative Income Fund assigned the loan documents to Lender to pursue collection of the amounts from Green Circle and to pursue all direct and indirect causes of action related to Green Circle's relationship.

16.     Defendant Oak Tree is limited liability company organized under the laws of the State of Wyoming. It only has one member, David Harbour, a married individual who is a citizen of Arizona.

17.     Defendant Milagro is a limited liability company organized under the laws of the State of Wyoming. It only has one member, David Harbour, a married individual who is a citizen of Arizona.

18.     Upon information and belief, no member of Oak Tree or Milagro is a citizen of the same state as any member of Plaintiff.

19.     Defendant David Harbour is a citizen of Arizona who resides at 11546 Ranch Gate Road, Scottsdale, Arizona 85255. Upon information and belief, David Harbour is married to Abby Harbour, and when engaged in the conduct described herein, David Harbour was acting for the benefit of his marital community.

20.     Accordingly, there is complete diversity between Plaintiff and Defendants.

## JURISDICTION AND VENUE

21.     The Court may properly maintain personal jurisdiction over each Defendant because each of the defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over each Defendant to comply with traditional notions of fair play and substantial justice.

22.     The United States District Court for the District of Arizona may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 because it is between citizens of different states and because it involves an amount in controversy in excess of $75,000.

23.     There is complete diversity of citizenship here because, for diversity purposes, Plaintiff is a citizen of Delaware and New Jersey; Defendants Oak Tree and Milagro are citizens of Arizona and Wyoming; and Defendants David and Abby Harbour are citizens of Arizona.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

24. Venue is properly laid in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(1) and (2) because each Defendant resides in and/or conducts business in the judicial district.

## ALLEGATIONS OF FACT

**Formation of Contracts:**

25. On August 6, 2014, Oak Tree executed a Revolving Credit Promissory Note ("the OT Note") with Green Circle to lend Green Circle a principal amount up to ten million dollars.

26. A true and correct copy of the OT Note is attached hereto and incorporated herein by reference as **Exhibit A**.

27. Upon information and belief, the funds evidenced by the OT Note were never advanced by Oak Tree to Green Circle.

28. On January 8, 2015, Defendant Milagro entered into an Exclusive Strategic Financial Consulting Services Agreement ("the Consulting Services Agreement") with Green Circle.

29. A true and correct copy of the Consulting Services Agreement is attached hereto and incorporated herein by reference as **Exhibit B**.

30. The Consulting Services Agreement detailed that Milagro would be the exclusive provider of financial strategy, consulting services, and banking referral services for Green Circle.

31. Under the Consulting Services Agreement, upon information and belief, Milagro prepared reports and loan projections for Green Circle.

32. Pursuant to the Consulting Services Agreement, Milagro would only receive compensation if certain projections were met.

33. It was fully anticipated that Green Circle would rely on these documents in their ordinary course of business to make presentations to lenders like FinTech.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

34.     Upon information and belief, Milagro knew of the relationship between FinTech and Green Circle and knew FinTech would reasonably rely on these documents in its ordinary course of business.

35.     In fact, in or around Fall 2015, Milagro prepared projections, including its Monthly Borrowing Base Certificates, regarding the financial condition and operations of Green Circle.

36.     Upon information and belief, these projections and Monthly Borrowing Base Certificates were inaccurate, false, and misleading regarding the financial condition and operations of Green Circle.

37.     Despite knowing the projections were misleading, Milagro provided them to Green Circle, with full knowledge and expectation that the inaccurate presentations would be submitted to Lender under the loan documents.

38.     Lender then reasonably relied on and actually used Milagro's documents in its ordinary course of business related to the loan documents.

**Written, Explicit Restrictions on Loan Proceeds:**

39.     On June 19, 2015, FinTech entered into a Loan and Security Agreement with Green Circle ("the Loan Agreement").

40.     A true and correct copy of the Loan Agreement is attached hereto and incorporated herein by reference as **Exhibit C**.

41.     The Loan Agreement specifically limits Green Circle to use the loan proceeds only for the funding of consumer loans.

42.     On August 7, 2015, FinTech, Green Circle, and Oak Tree entered into an Amended and Restated Subordination Agreement ("the Amended Subordination Agreement").

43.     A true and correct copy of the Amended Subordination Agreement is attached hereto and incorporated herein by reference as **Exhibit D**.

44.     The Amended Subordination Agreement restates the specific restriction that the loan proceeds be used exclusively for purposes of consumer lending.

45.     The Amended Subordination Agreement details that Oak Tree agreed to subordinate its security interest in all of Green Circle collateral (and any right to repayment therefrom) to Plaintiff's rights under the loan documents.

46.     The Amended Subordination Agreement was executed specifically to induce FinTech to make additional loans to Green Circle.

47.     Under the Amended Subordination Agreement, all proceeds from the "Collateral" (as defined therein) are to be used to satisfy in full any outstanding obligations owed to FinTech under the Loan Agreement.

**Assignments:**

48.     On June 24, 2015, FinTech assigned all its right, title, and interest in and to the Loan Agreement to Princeton Alternative Income Fund.

49.     On September 29, 2016, Princeton Alternative Income Fund assigned all its right, title, and interest in and to the Loan Agreement to Fund Recovery Services LLC.

50.     On December 1, 2016, Green Circle granted Fund Recovery Services LLC its security interest and a lien on its commercial tort claims.

51.     On December 1, 2016, Fund Recovery Services LLC assigned all its right, title, and interest in and to the Loan Agreement and Green Circle's commercial tort claims to FRS GC LLC.

52.     On June 16, 2017, FRS GC LLC assigned all its right, title, and interest in and to the Loan Agreement and Green Circle's commercial tort claims to Plaintiff.

**Green Circle's Business:**

53.     During its ordinary course of business, Green Circle used Alonzo Primus as Green Circle's controller.

54.     As controller, Alonzo Primus received daily instructions from David Harbour about the disbursement of Green Circle's funds.

55.     Alonzo Primus's role was limited to collecting incoming money and disbursing money as instructed.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

56.     Upon information and belief, David Harbour acted as the sole decision maker and instructed Alonzo Primus on to how to disburse Green Circle's funds, including by making payments to Oak Tree and Milagro.

**Program Vendors:**

57.     Pursuant to the Loan Agreement, Green Circle utilized Program Vendors "to perform the loan servicing, payment processing, compliance, lockbox services, and other functions."

58.     Schedule 8.15 of the Loan Agreement identifies CashSource Group ("CashSource") and Red Cypress Group ("Red Cypress") as third party servicers.

59.     As third party servicers, CashSource and Red Cypress provided check processing services on behalf of Green Circle.

60.     Pursuant to the Information Certificate of Green Circle, Red Cypress holds Green Circle's books and records at 215 East Center Street, Blanding, Utah 84511.

61.     A true and correct copy of the Information Certificate of Green Circle is attached as **Exhibit E**.

62.     Upon information and belief, Blake Collins and Tyler Johnson, associates of David Harbour, acted as representatives of CashSource.

63.     On or about October 25, 2016, Johnson informed Alonzo Primus that CashSource received approximately $90,000 in checks for processing on behalf of Green Circle.

64.     On or about November 1, 2016, Collins confirmed to Alonzo Primus that CashSource was in possession of these checks.

65.     Both Collins and Johnson have wrongfully refused to return the checks to Green Circle, despite expressly acknowledging that the checks rightfully belong to Green Circle.

66.     Upon information and belief, Collins, purporting to act on Green Circle's behalf, opened a bank account in Green Circle's name at San Juan Credit Union, located in Blanding, Utah ("the San Juan Account").

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

67.     Upon information and belief, Collins uses the San Juan Account to deposit the checks CashSource was holding on behalf of Green Circle.

68.     True and correct copies of the November and December San Juan Account summaries are attached as **Exhibit F**.

69.     As of the filing of this Complaint, Green Circle has not received these checks.

**Misuse of the Loan Proceeds:**

70.     Plaintiff's loan documents unmistakably articulate restrictions on the use of the loan proceeds. The documents' use of such unequivocal language put Green Circle and Defendants on clear notice of the terms of the contract.

71.     Due to their known relationship with Green Circle, Defendants knew of Plaintiff's loan documents and their clear restrictions on the use of Plaintiff's loan proceeds.

72.     Upon information and belief, David Harbour used his position of trust and control within Oak Tree and Milagro to orchestrate a scheme of manipulation and illicit transactions to misappropriate Plaintiff's loan proceeds in direct contravention of the loan restrictions.

73.     Upon information and belief, Defendants grossly misappropriated the loan proceeds by paying fees to Oak Tree and Milagro, none of which fell within the limited permitted purpose of consumer lending.

74.     Upon information and belief, David Harbour coordinated with Oak Tree for Oak Tree to receive Plaintiff's loan proceeds.

75.     Upon information and belief, David Harbour intentionally directed Green Circle to transfer the loan proceeds, in direct contravention of the loan restrictions, to Oak Tree.

76.     Despite the fact that the OT Note was never funded, upon information and belief, David Harbour directed Green Circle to pay Oak Tree approximately $83,111.43 from Plaintiff's loan proceeds.

77. Since the OT Note was never funded, Green Circle had no contractual obligation to pay Oak Tree.

78. Pursuant to the Consulting Services Agreement, Milagro was only entitled to receive compensation if certain projections were met.

79. Upon information and belief, the projections prepared by Milagro for Green Circle were not met and/or were materially false.

80. Despite the fact that Milagro had no contractual right to receive compensation under the Consulting Services Agreement, David Harbour additionally coordinated, upon information and belief, with Milagro for Milagro to receive Plaintiff's loan proceeds.

81. Upon information and belief, David Harbour intentionally directed Green Circle to transfer the loan proceeds, in direct contravention of the loan restrictions, to Milagro.

82. Upon information and belief, David Harbour directed Green Circle to pay Milagro approximately $665,000 from Plaintiff's loan proceeds.

83. Since Milagro's projections were false, Green Circle had no contractual obligation to pay Milagro.

84. Upon information and belief, Green Circle received less than a reasonably equivalent in exchange for each of the transfers.

85. Upon information and belief, David Harbour further abused his position with Green Circle for his own personal gain and to the detriment of Plaintiff. Namely, David Harbour caused Green Circle to make unauthorized use of the loan proceeds to Oak Tree and Milagro which were used to address his personal obligations, including but not limited to, paying a portion of his $5,000,000 fine with the Federal Trade Commission.

**Damages:**

86. As of the filing of this Complaint, Plaintiff has not received the Collateral proceeds diverted by Defendants in violation of the existing agreement.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Keesmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

87.     Following the fraudulent transfers to Oak Tree and Milagro, Green Circle became unable to pay Lender based on the outstanding loan agreements.

88.     As a result of Defendants' egregious actions, Lender suffered a direct loss and its business relationship with Green Circle was damaged when Green Circle became unable to pay Lender based on the outstanding loan agreements.

### FIRST COUNT
### Conversion
### (Against All Defendants)

89.     Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

90.     Defendants are presently in possession of identifiable funds belonging to Plaintiff.

91.     Defendants have exercised dominion or control over these funds such as to seriously interfere with Plaintiff's rights in these funds.

92.     Defendants' actions constitute an improper conversion of Plaintiff's property.

93.     Defendants have failed and/or refused to return Plaintiff's property, causing Plaintiff damages in the amount of the converted funds.

94.     Defendants acted maliciously and with the actual intent to cause Plaintiff economic harm. Defendants intentionally, or at least recklessly, exposed Plaintiff to harm that they knew was likely to occur, and did so in order to benefit themselves. Punitive damages are therefore justified.

### SECOND COUNT
### Tortious Interference with a Contract
### (Against All Defendants)

95.     Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

96.     Plaintiff's predecessor-in-interest, FinTech, entered into a Loan Agreement with Green Circle.

97.     This agreement created a valid, enforceable contract.

98.     By separate assignments, FinTech ultimately assigned its right, title, and interest in and to the Loan Agreement to Plaintiff.

99.     Defendants knew of the contract's existence and knowingly, intentionally, and maliciously decided, endeavored, and sought to engage in acts which would cause irreparable damage to the contract.

100.    Defendants intentionally, knowingly, and maliciously interfered with the contract by disrupting the business relationship between Lender and Green Circle and causing irreparable damage to the contract.

101.    As a direct and proximate result of Defendants' willful and improper conduct, Green Circle became unable to repay Lender the money owed under outstanding loan agreements, causing Lender direct harm.

102.    There was no justification or privilege for Defendants' actions.

103.    Defendants are therefore liable for the tort of tortious interference with a contract.

104.    Defendants acted maliciously and with the actual intent to cause Plaintiff economic harm. Defendants intentionally, or at least recklessly, exposed Plaintiff to harm that they knew was likely to occur, and did so in order to benefit themselves. Punitive damages are therefore justified.

## THIRD COUNT
### Tortious Interference with Business Relations
### (Against All Defendants)

105.    Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

106.    Plaintiff's predecessor-in-interest, FinTech, had a valid business relationship with Green Circle.

107.    By separate assignments, FinTech transferred all its right, title, and interest in and to the Loan Agreement to Plaintiff.

108.    Plaintiff's predecessor has a lawful business acting as a lender.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

109.  Defendants knew of Lender's business's existence and knowingly, intentionally, and maliciously decided, endeavored, and sought to engage in acts which would cause irreparable damage to Lender's business.

110.  Defendants intentionally, knowingly, and maliciously interfered with Lender's business by disrupting the business relationship between Lender and Green Circle and causing irreparable damage to Lender's business.

111.  As a direct and proximate result of Defendants' willful and improper conduct, Green Circle became unable to unable to repay Lender the money owed under outstanding loan agreements, causing Lender direct harm.

112.  There was no justification or privilege for Defendants' actions.

113.  Defendants are therefore liable for the tort of tortious interference with business relations.

114.  Defendants acted maliciously and with the actual intent to cause Plaintiff economic harm. Defendants intentionally, or at least recklessly, exposed Plaintiff to harm that they knew was likely to occur, and did so in order to benefit themselves. Punitive damages are therefore justified.

## FOURTH COUNT
### Tortious Interference with a Business Relationship and Expectancy
### (Against All Defendants)

115.  Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

116.  Plaintiff's predecessor-in-interest, FinTech, had a valid business relationship with Green Circle.

117.  By separate assignments, FinTech transferred all its right, title, and interest in and to the Loan Agreement to Plaintiff.

118.  As a result of the assignments, Lender had a valid business relationship with Green Circle, which was expected to provide Lender future economic benefits.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

119.   Defendants knew of Lender's business relationship with Green Circle and knowingly, intentionally, and maliciously decided, endeavored, and sought to engage in acts which would cause irreparable damage to Lender's relationship.

120.   Defendants intentionally, knowingly, and maliciously interfered with Lender's business relationship by misappropriating the loan proceeds.

121.   Lender and Green Circle's relationship was actually disrupted because Green Circle became unable to pay Lender based on outstanding loan agreements.

122.   As a direct and proximate result of Defendants' willful and improper conduct, Green Circle became unable to repay Lender the money owed under outstanding loan agreements, causing Lender direct harm.

123.   Defendants acted maliciously and with the actual intent to cause Plaintiff economic harm. Defendants intentionally, or at least recklessly, exposed Plaintiff to harm that they knew was likely to occur, and did so in order to benefit themselves. Punitive damages are therefore justified.

**FIFTH COUNT**
**Civil Conspiracy**
**(Against All Defendants)**

124.   Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

125.   Plaintiff's predecessor-in-interest, FinTech, entered into a Loan Agreement with Green Circle.

126.   By separate assignments, FinTech ultimately assigned its right, title, and interest in and to the Loan Agreement to Plaintiff.

127.   Upon information and belief, David Harbour coordinated with Oak Tree and Milagro to divert Plaintiff's loan proceeds for unauthorized use.

128.   Defendants acted wrongfully by misappropriating loan proceeds in direct contravention to the terms in the loan documents.

129.   As a direct and proximate result, Plaintiff suffered damages.

14

130.    Defendants acted maliciously and with the actual intent to cause Plaintiff economic harm. Defendants intentionally, or at least recklessly, exposed Plaintiff to harm that they knew was likely to occur, and did so in order to benefit themselves. Punitive damages are therefore justified.

**SIXTH COUNT**
**Breach of Contract**
**(Against Oak Tree)**

131.    Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

132.    On August 7, 2015, Green Circle, Oak Tree, and Plaintiff's predecessor-in-interest, FinTech, entered into an Amended Subordination Agreement.

133.    This Amended Subordination Agreement is a valid, enforceable contract.

134.    Under the terms of the contract, all proceeds from the Collateral would be used to satisfy in full any outstanding obligations owed to FinTech under the Loan Agreement.

135.    By separate assignments, FinTech ultimately assigned its right, title, and interest in and to the Loan Agreement to Plaintiff.

136.    As of the filing of this Complaint, Oak Tree failed to provide Plaintiff with any Collateral proceeds that Plaintiff should have received under the Subordination Agreement.

137.    As a direct and proximate result, Plaintiff has suffered damages.

138.    Oak Tree's failure to pay the amounts rightfully owed constitutes a breach of contract.

**SEVENTH COUNT**
**Breach of Contract**
**(Against Milagro)**

139.    Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

140.    On January 8, 2015, Green Circle and Milagro entered into a Consulting Services Agreement.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

141. This Consulting Services Agreement is a valid, enforceable contract.

142. Under the terms of the contract, Milagro would provide financial strategy, consulting services, and banking referral services for Green Circle.

143. Milagro performed these services by providing reports and projections regarding the financial condition and operations of Green Circle.

144. Lender is a third party beneficiary because it was known and expected that Green Circle would provide these reports and projections to lenders, including but not limited to, Lender.

145. Because of the known relationship between Lender and Green Circle, it was also known and expected Lender would then rely on the reports and projections.

146. Milagro knowingly submitted materially false and misleading projections to Green Circle.

147. Lender then reasonably relied on these projections to its detriment and suffered a direct and substantial loss.

148. Milagro's submission of false and misleading projections constitutes a breach of contract.

## EIGHTH COUNT
### Avoidance of Transfer of Plaintiff's Loan Proceeds – Actual Fraudulent Transfer (Against Oak Tree)

149. Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

150. Upon information and belief, David Harbour directed Green Circle to illicitly transfer Plaintiff's loan proceeds to Oak Tree.

151. Green Circle then transferred approximately $83,111.43 of Plaintiff's loan proceeds to Oak Tree.

152. This transfer was made with the actual intent to hinder, delay, or defraud Plaintiff's right to recover funds from Green Circle.

153. As a result, Oak Tree is liable for actual fraudulent transfer.

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

154.   Pursuant to Arizona Uniform Fraudulent Transfer Act § 44-1004, these transfers are voidable.

### NINTH COUNT
**Avoidance of Transfer of Plaintiff's Loan Proceeds – Actual Fraudulent Transfer**
**(Against Milagro)**

155.   Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

156.   Upon information and belief, David Harbour directed Green Circle to illicitly transfer Plaintiff's loan proceeds to Milagro.

157.   Green Circle then transferred approximately $665,000 of Plaintiff's loan proceeds to Milagro.

158.   This transfer was made with the actual intent to hinder, delay, or defraud Plaintiff's right to recover funds from Green Circle.

159.   As a result, Milagro is therefore liable for actual fraudulent transfer.

160.   Pursuant to Arizona Uniform Fraudulent Transfer Act § 44-1004, these transfers are voidable.

### TENTH COUNT
**Avoidance of Transfer of Plaintiff's Loan Proceeds – Constructive Fraudulent**
**Transfer**
**(Against Oak Tree)**

161.   Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

162.   Green Circle, by and through the direction of David Harbour, transferred Plaintiff's misappropriated loan proceeds to Oak Tree.

163.   Upon information and belief, Green Circle received less than a reasonably equivalent value in exchange for each transfer.

164.   Due to the actions of the Defendants – and without the knowledge of Lender at the time of its transactions with Green Circle – Green Circle was insolvent.

165.   As a result, Oak Tree is liable for constructive fraudulent transfer.

166.    Pursuant to Arizona Uniform Fraudulent Transfer Act § 44-1004, these transfers are voidable.

## ELEVENTH COUNT
### Avoidance of Transfer of Plaintiff's Loan Proceeds – Constructive Fraudulent Transfer
### (Against Milagro)

167.    Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

168.    Green Circle, by and through the direction of David Harbour, transferred Plaintiff's misappropriated loan proceeds to Milagro.

169.    Upon information and belief, Green Circle received less than a reasonably equivalent value in exchange for each transfer.

170.    Due to the actions of the Defendants – and without the knowledge of Lender at the time of its transactions with Green Circle – Green Circle was insolvent.

171.    As a result, Milagro is liable for constructive fraudulent transfer.

172.    Pursuant to Arizona Uniform Fraudulent Transfer Act § 44-1004, these transfers are voidable.

## TWELFTH COUNT
### Recovery of Value of Fraudulent Transfers
### (Against Oak Tree and Milagro)

173.    Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

174.    The transfers from Green Circle to Oak Tree and Milagro were fraudulent transfers because (1) the transfers were made with the actual intent to defraud and (2) Green Circle received less than a reasonably equivalent value in exchange for the transfers.

175.    Green Circle is entitled to avoid each of these transfers pursuant to the Arizona Uniform Fraudulent Transfer Act § 44-1004.

176.    Green Circle is entitled to recover the value of the transfers of the misused loan proceeds pursuant to Arizona Uniform Fraudulent Transfer Act § 44-1007.

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

Kercsmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

## THIRTEENTH COUNT
### Aiding and Abetting Fraudulent Transfer to Oak Tree
### (Against David Harbour)

177.   Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

178.   The transfers from Green Circle to Oak Tree were fraudulent transfers because (1) the transfer was made with the actual intent to defraud and (2) Green Circle received less than a reasonably equivalent value in exchange for the transfers.

179.   Upon information and belief, David Harbour knowingly and intentionally orchestrated, authorized, and carried out the transfers of Plaintiff's loan proceeds.

180.   Upon information and belief, David Harbour actively participated in the fraudulent transfer of the loan proceeds by knowingly and intentionally orchestrating, authorizing, and carrying out the transfers of Plaintiff's loan proceeds.

181.   Upon information and belief, David Harbour provided substantial assistance in the fraudulent transfer of the loan proceeds by knowingly and intentionally orchestrating, authorizing, and carrying out the transfers of Plaintiff's loan proceeds.

182.   David Harbour's assistance was a substantial factor in causing the transfers of Plaintiff's loan proceeds.

183.   The fraudulent transfer of the loan proceeds was the reasonable and foreseeable consequence of David Harbour's conduct.

184.   David Harbour is liable for the fraudulent transfer of the loan proceeds to Oak Tree.

## FOURTEENTH COUNT
### Aiding and Abetting Fraudulent Transfer to Milagro
### (Against David Harbour)

185.   Plaintiff repeats and realleges each allegation set forth previously in this Complaint.

186.   The transfers from Green Circle to Milagro were fraudulent transfers because (1) the transfer was made with the actual intent to defraud and (2) Green Circle received less than a reasonably equivalent value in exchange for the transfers

Kersmar & Feltus PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
(480) 421-1001

187.   Upon information and belief, David Harbour knowingly and intentionally orchestrated, authorized, and carried out the transfers of Plaintiff's loan proceeds.

188.   Upon information and belief, David Harbour actively participated in the fraudulent transfer of loan proceeds by knowingly and intentionally orchestrating, authorizing, and carrying out the transfers of Plaintiff's loan proceeds.

189.   Upon information and belief, David Harbour provided substantial assistance in the fraudulent transfer of the loan proceeds by knowing and intentionally orchestrating, authorizing, and carrying out the transfers of Plaintiff's loan proceeds.

190.   David Harbour's assistance was a substantial factor in causing the transfers of Plaintiff's loan proceeds.

191.   The fraudulent transfer of the loan proceeds was the reasonable and foreseeable consequence of David Harbour's conduct.

192.   David Harbour is liable for the fraudulent transfer of the loan proceeds.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, as follows:

A.   Compensatory damages in an amount to be proved, but not less than $75,000;

B.   Punitive damages in an amount to be proved;

C.   Setting aside, avoiding and annulling all fraudulent transfers set out above;

D.   An award of attorneys' fees under the terms of the contracts and/or A.R.S. § 12-341.01;

E.   An award of the costs of this action under the terms of the contracts and/or A.R.S. § 12-341;

F.   Pre- and post-judgment interest at the highest rate allowed by law; and

G.   Such other and further relief as this Court deems necessary, just and proper under the circumstances.

DATED this 17th day of July, 2017.

KERCSMAR & FELTUS PLLC

By: _s/ Sean J. O'Hara_
     Geoffrey S. Kercsmar
     Sean J. O'Hara
     7150 East Camelback Road, Suite 285
     Scottsdale, Arizona 85251
     *Attorneys for Plaintiff*