# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FRS GC Corp., a Delaware corporation, | No. CV-17-02348-PHX-DGC |
| Plaintiff/Counterdefendant, | **ORDER** |
| v. | |
| Oak Tree Management LLC and Milagro Consulting LLC, Wyoming limited liability companies; and David and Abby Harbour, a married couple and citizens of Arizona, | |
| Defendants/Counterclaimants. | |

Plaintiff FRS GC Corp. ("FRS Corp") has sued Defendants Oak Tree Management LLC ("Oak Tree"), Milagro Consulting LLC ("Milagro"), and David and Abby Harbour, asserting various state-law claims related to an alleged misappropriation of funds. Doc. 1. Defendants have filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Doc. 59. The motion is fully briefed (Docs. 63, 66), and oral argument has not been requested. For reasons stated below, the Court will grant the motion.

**I.    Background.**

Plaintiff's predecessor in interest, FRS GC LLC ("FRS"), filed a nearly identical suit against Defendants in April 2017, which was assigned to Judge James A. Teilborg. *See* Doc. 1, Case No. CV-17-01189-JAT. The complaint asserted diversity jurisdiction under 28 U.S.C. § 1332. *Id.* ¶ 21.

For purposes of diversity jurisdiction, "an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage*, *LP*, 437 F.3d 894, 899 (9th Cir. 2006). FRS alleged that no member of Oak Tree or Milagro is a citizen of the same state as any member of FRS. Doc. 1 ¶ 18. Judge Teilborg found this allegation insufficient to establish diversity jurisdiction and directed FRS to supplement its complaint with the name and citizenship of each LLC member. Doc. 17 at 2. FRS filed a supplement stating in part that Princeton Alternative Income Fund L.P. ("PAIF"), a Delaware limited partnership, is FRS's sole member. Doc. 20 at 1. Judge Teilborg concluded that the supplement was deficient because it failed to provide information for each PAIF partner. Doc. 21. Declining an opportunity to file an additional supplement, FRS chose instead to dismiss the complaint on June 14, 2017. Doc. 22.

The next day, PAIF incorporated Plaintiff FRS Corp in Delaware. On the following day – June 16, 2017 – FRS assigned its claims against Defendants to Plaintiff. Plaintiff brought this action one month later, asserting the assigned claims. Doc. 1, Case No. CV-17-02348-DGC. The complaint asserts diversity jurisdiction (*id.* ¶ 22), which appears to exist from the face of the complaint.[1]

In April 2018, Plaintiff filed a motion to transfer the case to the federal bankruptcy court in New Jersey. Doc. 45. In response, Defendants presented facts sufficient to raise a legitimate question as to whether Plaintiff and FRS have attempted to collusively manufacture diversity jurisdiction in violation of 28 U.S.C. § 1359. Doc. 46 at 7-9. The Court denied the motion to transfer and allowed the parties to conduct jurisdictional discovery. Docs. 49, 51.

Defendants filed the present motion to dismiss following completion of the discovery. Doc. 59. FRS's claim assignment to Plaintiff, Defendants argue, is a sham transfer to a shell corporation made solely to invoke the Court's jurisdiction. *Id.* at 2, 7-9.

---

[1] The amount in controversy exceeds $75,000, and complete diversity among the parties exists because Plaintiff is a Delaware corporation with its principal place of business in New Jersey, Oak Tree and Milagro are Wyoming LLCs, and David Harbor – the sole member of Oak Tree and Milagro – is a citizen of Arizona (as is his spouse Abby). *Id.* ¶¶ 9, 16-19.

Plaintiff asserts that the assignment serves the legitimate business purpose of keeping the identities of PAIF's partners confidential. Doc. 63 at 2.

**II. Discussion.**

**A. The Anti-Collusion Statute and Presumptively Collusive Assignments.**

The federal anti-collusion statute, 28 U.S.C. § 1359, provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." The statute is "aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into the federal courts." *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992). The Supreme Court has explained:

> If federal jurisdiction could be created by assignments . . . which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties. Such 'manufacture of Federal jurisdiction' was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors.

*Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828-29 (1969).

"When the issue of a collusive assignment is raised, the party asserting diversity has the burden of showing the non-collusive nature of the assignment." *W. Farm Credit Bank v. Hamakua Sugar Co.*, 841 F. Supp. 976, 981 (D. Haw. 1994) (citing *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir. 1989)). Certain types of assignments "warrant particularly close scrutiny" and "are presumptively ineffective to create diversity jurisdiction." *Yokeno*, 973 F.2d at 809-10 (quoting *Dweck*, 877 F.2d at 792). These include assignments between parent companies and subsidiaries and between corporations and their officers, where the close relationship "necessarily presents opportunities for the collusive manufacture of commercial reasons for the assignment." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994). The presumption of collusion for these suspicious assignments "is heightened

where a jurisdictional motive is apparent." *Yokeno*, 973 F.2d at 811; *see Nike*, 20 F.3d at 992.

**B. FRS's Claim Assignment to Plaintiff Is Presumptively Collusive.**

As noted, FRS assigned the claims in this litigation to Plaintiff. *See* Docs. 59-1 at 46, 63 at 2. FRS owns all of Plaintiff's stock. Doc. 59-1 at 41-42. FRS and Plaintiff share the same business address, and the same people operate each entity. *Id.* at 58, 67-68. Because this close relationship would allow FRS and Plaintiff to create a pretextual business reason for the claim assignment, the assignment is presumptively collusive. *See Nike*, 20 F.3d at 991-91 ("[W]hen a wholly-owned subsidiary assigns a claim to its parent, just as in the reverse situation, . . . this assignment triggers a presumption of collusion."); *Yokeno*, 973 F.2d at 809-10 ("Assignments between parent companies and subsidiaries . . . are presumptively ineffective to create diversity jurisdiction.") (quoting *Dweck*, 877 F.2d at 792); *Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 596 (9th Cir. 1996) (noting that the presumption applies to transfers to shell corporations); *Zapata v. Flintco, Inc.*, No. 2:09-CV-03555 GEB, 2011 WL 3583401, at *7 (E.D. Cal. Aug. 12, 2011) (finding a close relationship for purposes of the presumption where there was substantial overlap in the ownership and management of a corporation and its affiliate).

The presumption of collusion is heightened in this case because a jurisdictional motive is apparent. *See Yokeno*, 973 F.2d at 811; *Nike*, 20 F.3d at 99. Plaintiff's Rule 30(b)(6) witness, Philip Burgess, testified that Plaintiff was formed because FRS was not able to identify the partners associated with PAIF or otherwise disclose such information to Judge Teilborg. Doc. 59-1 at 77-78, 81. This testimony confirms that FRS was motivated by a desire to avoid an adverse jurisdictional ruling from Judge Teilborg and to preserve the federal forum. Indeed, Plaintiff makes clear in its response that PAIF formed Plaintiff, and directed FRS to assign the claims to Plaintiff, in response to Judge Teilborg's requirement that FRS establish diversity jurisdiction by disclosing the identities of PAIF's partners. Doc. 63 at 2. The fact that the assignment was made only

two days after FRS dismissed its complaint removes all doubt as to whether a jurisdictional motive exists. *See Nike*, 20 F.3d at 992 ("If we had any remaining doubts whether NIL and Nike acted at least in part to obtain a federal forum, the timing of the assignment, only three days before Nike filed the complaint in this action, dispels them."); *Zapata*, 2011 WL 3583401, at *10 (finding a jurisdictional motive where conduct prior to the assignment "affirmatively evidenced [the assignor's] desire to file a lawsuit and proceed in federal court").

Given the clear jurisdictional motive, a heightened presumption of collusion applies to the claim assignment to Plaintiff.

### C. Plaintiff Has Not Rebutted the Heightened Presumption of Collusion.

To overcome the heightened presumption, Plaintiff "must show more than simply a colorable or plausible business reason. The business reason must be sufficiently compelling to show that the assignment would have been made absent the purpose of gaining a federal forum." *Yokeno*, 973 F.2d at 811. "Simply articulating a business reason is insufficient; the burden of proof is with the party asserting diversity to establish that the reason is [compelling] and not pretextual." *Id.* at 810; *see FNBN-RESCON I LLC v. Ritter*, No. 2:11-CV-1867-GMN-VCF, 2012 WL 3929950, at *5 (D. Nev. Sept. 6, 2012) (the plaintiff can meet its "burden by offering 'evidence that the transfer was made for a legitimate business purpose unconnected with the creation of diversity jurisdiction'") (citations omitted); *see also Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987) (explaining that in opposing a factual challenge to jurisdiction under Rule 12(b)(1), the plaintiff must present "evidence outside of the allegations that support a finding of jurisdiction"); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (the party opposing a factual motion to dismiss "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction").

Plaintiff asserts that PAIF has a strong interest in maintaining the confidentiality of its investors, but presents no evidence in support of this assertion. Doc. 63 at 5. When

evaluated in light of the totality of the circumstances, *see Yokeno*, 973 F.2d at 810, Plaintiff's purported business reason for the claim assignment is not sufficient to rebut the presumption of collusion. The assignment occurred only two days after FRS dismissed its complaint when it was not able to establish diversity jurisdiction. *See* Doc. 59-1 at 41. Plaintiff gave no consideration for the assignment and had no preexisting interest in the assigned claims. *See id.* at 50, 56. Neither FRS nor PAIF have expressly disavowed any continuing interest in the claims. To the contrary, any funds recovered in this action will inure to the benefit of PAIF – the sole member of FRS and the ultimate parent company of Plaintiff. *Id.* at 42. This Circuit has made clear that in any § 1359 inquiry, "[t]he objective fact of who really is the party in interest is the most important thing to be determined." *Attorneys Trust*, 93 F.3d at 596.

The Court concludes that Plaintiff's purported business reason for the claim assignment is not "sufficiently compelling" to overcome the heightened presumption of collusion or otherwise show that the assignment would have been made absent the purpose of preserving a federal forum. The assignment falls squarely within the scope of § 1359. The Court will grant Defendant's motion to dismiss for lack of subject matter jurisdiction. *See Kramer*, 394 U.S. at 827-28 (holding that the "assignment was 'improperly or collusively made' within the meaning of § 1359" where the plaintiff agreed on the same day as the assignment to pay to the assignor 95% of any recovery, the plaintiff had no connection to the case before the assignment, and the plaintiff admitted that the assignment was motivated in part by the assignor's desire to create diversity jurisdiction); *Nike*, 20 F.3d at 993 (finding that the plaintiff failed to rebut the presumption of collusion where its "business reasons merely justif[ied] its desire to litigate in a federal forum"); *Dweck*, 877 F.2d at 792-93 (finding the assignment to be collusive where it was not supported by consideration and the plaintiff had not shown that the assignor "disavowed any continuing interest in the litigation or its proceeds"); *Zapata*, 2011 WL 3583401, at *13 (finding the assignment to be collusive where it "resemble[d] anything but an 'arms-length' transaction"); *First Nat'l Bank in Sioux Falls*

*for Sequoia Charitable Tr. v. Warner Bros. Entm't Inc.*, No. CV-09-00674-GAF (VBKx), 2009 WL 10671378, at *6-9 (C.D. Cal. July 10, 2009) (finding that the plaintiff's purported reasons for the assignment to the trust were not sufficient to overcome the presumption of collusion where the assignment coincided with the commencement of litigation, the trust had no preexisting interest in the litigation, and the assignor retained control over the trust).[2]

### D. Defendants' Request for Sanctions.

Defendants contend that Plaintiff engaged in conduct, including certain discovery violations, warranting the imposition of sanctions under the Court's inherent powers. Doc. 59 at 9. District courts have "the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 94. The Court may impose sanctions under its inherent authority only if it "specifically finds bad faith or conduct tantamount to bad faith." *Id.* (quoting *Fink*, 239 F.3d at 994); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (a district court can impose sanctions when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons"); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (Rule 37 sanctions "are appropriate only in 'extreme situations' where the [discovery] violation is 'due to willfulness, bad faith, or fault of the party'") (citation omitted).

The request for sanctions is based on Plaintiff's production of a limited number of documents during discovery, Plaintiff's filing of the motion to transfer, and Burgess's disparaging remark about defense counsel and attempt to "filibuster" lines of questioning during his deposition. Doc. 59 at 9-11. But Defendants present no clear evidence of bad faith on Plaintiff's part.

---

[2] Given this ruling, the Court also lacks subject matter jurisdiction over Defendants' counterclaims. *See* Docs. 35 at 17-24, 63 at 10.

Moreover, Defendants could have sought sanctions earlier if they believed that Plaintiff had engaged in discovery abuses warranting such relief. The Case Management Order makes clear that if a discovery dispute arose, the parties were required to arrange a telephone conference during which the Court would seek to resolve the dispute and enter any appropriate orders. Doc. 31 at 3-4. Defendants never requested a discovery conference call with the Court.

The Court's inherent power to sanction parties must be exercised "with restraint and discretion." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002) (quoting *Chambers*, 501 U.S. at 44). Defendants' request for sanctions will be denied.

### E. Defendant' Request for an Award of Costs.

Defendants seek an award of costs pursuant to 28 U.S.C. § 1919. Doc. 59 at 11. The statute provides that the district court may order the payment of "just costs" in any action that is dismissed for lack of jurisdiction. "A cost award under § 1919 does not turn on prevailing party status and lies within the sound discretion of the district court." *Otay Land Co. v. United Enters. Ltd.*, 672 F.3d 1152, 1156 (9th Cir. 2012). To determine whether to award "just costs" under § 1919, "a district court should consider what is most fair and equitable under the totality of the circumstances." *Id.* at 1157. Relevant factors include any exigent circumstances, such as prejudice or culpable conduct, and the strength of the jurisdictional claim. *See id.* at 1158-59.

Defendants contend that Plaintiff's alleged discovery abuses have wasted significant time and resources, and Plaintiff has a demonstrably ineffective jurisdictional claim given that the claims assignment has all the hallmarks of a sham transaction. Doc. 59 at 12. Although Defendants have prevailed on their motion to dismiss, the Court cannot conclude that Plaintiff's assertion of jurisdiction was entirely baseless. Plaintiff asserted an arguably legitimate business purpose for the assignment, namely, the desire to keep the identities of PAIF's limited partners confidential. This reason is not sufficiently compelling to rebut the presumption of collusion, particularly in light of the lack of supporting evidence, but neither is it entirely illegitimate. Having considered the totality

of circumstances, the Court will deny Defendants' request for costs. *See Otay*, 672 F.3d at 1157 (recognizing that a cost award under § 1919 is expressly discretionary).

**IT IS ORDERED:**

1. Defendants's motion to dismiss for lack of subject matter jurisdiction (Doc. 59) is **granted**.

2. The Clerk is directed to **terminate** this action.

Dated this 1st day of March, 2019.

David G. Campbell
Senior United States District Judge